We're now going to move to appeal 24-2876, AAA Gaming et al. v. Midwest Electronics Gaming. We've got split argument on behalf of the appellant. Mr. Schatz will begin with you. Good morning. May it please the court. My name is Brian Schatz on behalf of the appellant, Midwest Electronics Gaming, LLC. To begin, we'd like to address the subject matter jurisdiction question that was raised by this court in the docketing statement phase as well as instructed thereafter. In this case, appellee's plaintiffs below invoked diversity jurisdiction and the subject matter of the diversity jurisdiction has two elements, obviously the amount and controversy. That element is straightforward in this case. The pleadings raise at issue millions of dollars, which is more than the $75,000 jurisdictional amount for diversity jurisdiction. Also straightforward is defendant's side of the v for complete diversity of citizenship. On defendant's side of the v is Midwest Electronics Gaming, a single member LLC whose sole member is domiciled in Illinois. On plaintiff's side of the v, the two LLCs have individual members and both LLCs also have a member who is a trust. Addressing the individual members, all individual members of the LLC are domiciled in South Dakota or Louisiana, meaning that the LLCs will take that citizenship. For the trust, it is a traditional private family trust. And under Supreme Court precedent, specifically AmeriCorps, that trust takes on the citizenship of its trustee and the trustee is domiciled in South Dakota, meaning that plaintiff's side of the v, the two LLCs are citizens, considered citizens of both South Dakota and Louisiana, defendant's side of the v, Illinois, meaning that complete diversity remained. I welcome any questions from the court. None. Thank you, Mr. Schatz. Mr. Murphy, we'll move to you now for the further argument on behalf of the appellant. Good morning, Your Honors. May it please the court. My name is Jim Murphy. I represent the defendant appellant in this case. Your Honors, this appeal presents a single, substantive question, and that is, does a district court have jurisdiction to decide if a party defendant is a prevailing party pursuant to a contractual term after the plaintiff's filed a notice of dismissal pursuant to Rule 41A1AI? The answer is clearly yes. Mr. Murphy, is the mutual release agreement valid and enforceable? At this point, it's a tricky question, Judge, and I apologize for calling it a tricky question. It's an agreement that the district court had found that one that purports to control gaming in Illinois. Because of that, and that was based on how these plaintiffs were asserting that contract. Because of that and because of how they're asserting it, mainly because of the duty of good faith and fair dealing in every contract, it was sent down to the Illinois Gaming Board. We're aware of the history. My question is, from your client's perspective, is the MRA valid and enforceable? And I apologize for sort of getting around it, Judge, but the reason is that the way these plaintiffs are enforcing it was not valid and enforceable. The agreement itself has never been found by the Illinois Gaming Board to be invalid and unenforceable, and I know that's a little bit nuanced, but it's important here because until the Illinois Gaming Board actually goes on record and says, yes, under our rules on gaming, this is valid and enforceable, it can't be enforced the way the plaintiffs were trying to enforce it against my client. So they didn't take the position that, oh, no, it's invalid and unenforceable. They just said under the Illinois Gaming Board and the way it's being enforced here, we can't say that it's valid and enforceable under our rules. And that was an important part of the case. You want to follow up? No, go ahead. I guess what I'm struggling with is if it's not valid and enforceable, I don't see how we enforce, how any court can enforce the fee provision. And that's exactly why this matters, Your Honor, because... I know that's why it matters, and that's why we're asking for a straight answer as to whether you think it's valid and enforceable, and I haven't heard one yet. The attorney's fee provision is clearly valid and enforceable. No, that's not my question. Is the agreement valid and enforceable? Because it's a provision within the agreement. That's why we're focused on that. So if the agreement is not valid, not enforceable, void, annullity, there's some kind of problem with the overarching contract, you would think, well, that means it... How can we then go in for a contract that's not valid and enforce a subsection of it as if it were valid? The MRA is invalid and unenforceable to the extent that it purports to control gaming in Illinois. Aren't you giving away attorney's fees by that answer? No, because attorney's fees are a separate part of the agreement between the parties, between the plaintiffs and defendant, that says any time a party tries to enforce it but fails, the other side is entitled to their fees. They tried to enforce it. The way they enforced it was invalid. And we've succeeded. We've prevailed. But it's as if what you're doing... I think this is the reason you're getting the question, or at least it is for me. It's as if we're going through the contract. It has 25 terms to it. I'm just making that up. And we're saying, well, there's no meeting of the mind on 1. There is on 2. 2 is attorney's fees. There's not on 3. There is on 4. That's not the way we usually go about figuring out whether we have a contract. We don't go term by term, provision by provision. We ask at the threshold, do we have a valid and enforceable agreement? And then if the answer to that is yes, then you would say, well, that means there's valid and enforceable terms and conditions. And one of those terms and conditions here is an attorney's fee provision. Understood, Your Honor. And this is a fairly complex case because of the way it interrelates with the gaming rules and the agency administrative rules about gaming. And it's an important point because we cite in our opening brief at footnote 16 the Keppel v. Cardiac-Thoracic case. And what that case says is that under Illinois law, the current... This is a quote from the case. The current status of the law on severability of the contract, which is what we're trying to do here, we're severing out that part of the case. The current status of the law is that when some portion of a contract is unenforceable as against public policy, a court may nevertheless enforce the rest of the agreement in favor of a party who did not engage in serious... So does that mean in our opinion we have to do severability analysis? We have to apply Illinois law and figure out what survives under a severability analysis? I don't believe so, Judge, because I believe the prevailing party clause is clear. I believe collateral jurisdiction that the court had allows that. And again, I have to emphasize that nobody has ever found, the Illinois Gaming Board didn't find, the district court didn't find that the MRA is invalid or unenforceable. Your quotation from Keppel was incomplete.  ...of the agreement that is unenforceable is not an essential part of the agreed exchange. Looks to me like the central part of this agreed exchange is this transfer of control over these hundreds of video gaming machines, right? Unfortunately, no, it's not that simple, Your Honor. Please. Because what happened was it was a sale of contracts. Something called a use agreement that allows a terminal operator like my client, who is licensed, to own and install and operate video gaming terminals at a licensed location. We purchased several hundred of these use agreements from the plaintiffs. We paid the money, it was about $4 million, and subsequent to that, some of the use agreements were found to be forged. And so we said, okay, we can't use those use agreements. We're not going to install terminals in locations that have forged use agreements. That would be illegal. The plaintiffs sued us because we didn't pay for those. And they sued us, and what they said was, you have to install those. It's part of the contract. You owe us money when you install them, and you have to do it on our behalf, and you have to pay us. And that's when the district court said, wait a minute, that's the plaintiffs who are unlicensed, trying to force us to operate games when we shouldn't be operating games. And that's the issue we have here, and that's why it's so important that the Illinois Gaming Board said, yeah, we're not going to call this valid and enforceable. It strikes me that this is a heads you win, tails they lose argument, because you only are asking for the enforcement of the agreement to the extent it's going to advantage you. But that's not what we do as courts. We enforce the agreement if it's valid. And I understand your decision to point to the Illinois Gaming Commission and indicate that they need to give their imprimatur with regard to an agreement, but here we have a case pending in federal court, federal district court, with a judge attempting to make a determination as to whether or not this agreement is enforceable. That's what we have to do. Right, and John, that's a great point, but the distinction here, and I know it's a subtle one, is that we're okay if they enforce the mutual release agreement on the specific language of the text of the MRA. Because the specific text says nothing about us having to install games with our discretion, we believe it would be illegal to do so. The way they're trying to enforce the mutual release agreement was forcing us to do so when we think it would be illegal. That's what we're complaining about. They can't enforce that against us that way. That would violate the law, that would violate our license. That's the difference. The mutual release agreement on its strict terms would be enforceable going forward. It would be valid going forward. Again, it's the plaintiffs were trying to remove that discretion from us operating terminals in Illinois. That's what caused the district court to say, hey, you're reading this contract to be one that purports to control gaming in Illinois. If you're doing it that way, you've got to go to the Illinois Gaming Board. And the Illinois Gaming Board said, hey, we can't give you the relief you want. So it's a subtle distinction, but it's a very important distinction. The text of the MRA is not invalid in that way. It's the way that the plaintiffs are trying to enforce it against us. Can I switch you back to the procedural issues here? We're familiar with Cooter and Gell and the white opinions dealing with fee awards under other provisions after a Rule 41 dismissal. Can you point us to cases awarding fees under contracts after a voluntary dismissal under Rule 41A? Yes, Judge. Two cases from this circuit, actually. One of which was 41, one of which was not, but it's contract-based. The first one is the first commodity case we cite in our brief. 766F2nd at 1014. That's what this court affirmed in the Northern District of Illinois awarding fees on a contract. In that case, it was after a summary judgment had been entered. So after the judgment. It's not a Rule 41. OK. Yeah, that's the next one. That's the Berthold case. Berthold versus Adobe. Adobe. 242F3rd at 776, 2001. That was a Rule 41 dismissal in a contract and a Lanham Act case. And that district court in that case, quote, summarily denied the request for attorney's fees, unquote. Just like here. In that case, this court actually reversed that finding. And what the court said was, quote, Berthold litigated and lost on claims arising from its contract with Adobe. The case is remanded with instructions to award legal expenses that arose in connection with the contract, unquote. And that was after a Rule 41 dismissal. Do I have to reserve the remainder of your time? Thank you. Yes. Thank you. Thank you, Mr. Murphy. Mr. Lesmeister will now move to you for argument on behalf of the appellee. Good morning, honorable panel. My name is James Lesmeister. May it please the court. Your honors, I'll go back to the most recent point he's made about Berthold. In Berthold, Judge Kness appropriately distinguished that case because the district court in Berthold considered something outside of the complaint, which was the contract. And it said Adobe contractually did not have to put the fonts of Berthold in the matter. This was something that was then considered a motion for summary judgment. And it was taken out of the 12B6 context. And therefore, that why there was an award of attorney's fees is because Adobe substantially won. I want to ask Judge Hamilton's question of you. And that is, do you know of any circuit court in the United States that has held, following a Rule 41A voluntary dismissal, that there remains jurisdiction to interpret a contract and an attorney fee provision? No. And in terms of this, there's proper cases that say that Judge Kness had it right. Judge Kness. Oh, I'm sorry. I was educated in Arkansas, Your Honor. That's all right. So, Judge Kness had it right. What he said is, you have to look at what 41A does. And he went through in the May 8th hearing, systematically asking the proper questions. How would that be different than Section 1988 or Rule 11? Because those are collateral. Rule 11, let me take the 1988 first, is because 1988 is provisioned within a statute that allows the courts to do that. So the cases that they cite where there was a ward of attorney's fees, such as the other case that was... And it was distinguished by Judge Kness. Just give me one minute. Citizens for Better Environment versus Steele. Both of those cases are dealing with federal statutes that allow for attorney's fees. This allows the court to have that collateral jurisdiction. But how is it different? What makes it collateral, the fact that it's statutory versus contractual? In this case, what makes the difference is, is that to interpret a contract. To interpret this case and interpret this contract, there has to be a judgment on the merits, and there wasn't that. There was no answer, and there was no counterclaim. And it was admitted at the May 8th hearing by Mr. Murphy on behalf of... But there can be all kinds of cases where there's no judgment, but there's a Rule 11 sanction, there's a 1988 award. And we know, you know, that there's cases that, under that, the Steele company, the case you're talking about is the remand, or the post-U.S. Supreme Court Steele company matter in our court, where statutes have to be interpreted, or rules. Rule 11 has to be interpreted, 1988 has to be interpreted, etc. And there's controversy over it, and there's briefs and all that. In the Steele case... So why is it that different than having to interpret a contract here? Because there has to be an adjudication on the merit. It's the common theme, you see. Is there judicial improper matter? There's no adjudication on the merits in Cooter, though. Cooter is a Rule 11. And Cooter Rule 11 is not an Article 3 jurisdiction, Article 1, allowing the courts to maintain the civility and meritorious function of the court. It's a separate jurisdiction imposed upon the court to allow it to police the court to make sure that everyone's doing what is appropriate and what is meritorious. And go back to the Steele case. The Steele case was, the Steele company all the way went up to the United States Supreme Court. And it said that this plaintiff had no standing to bring this case. So is the line you're trying to suggest that it's collateral and therefore it can be adjudicated post-dismissal if its source is from a statute passed by the U.S. Congress? A statute, a rule, or judicial imprimatur, meaning that there was a judicial change that allowed for such to happen. But if the source is a contract that that doesn't do it? It doesn't do it because you're going to have to, like you said, Your Honor, in terms of this case, you would now have to get into the merits of the case. What hasn't been decided, has this case been decided, is the merits of this case. Now the point that they're trying to make in terms of that, I don't think Mr. Murphy needs us to, he's not asking us to decide anything about gaming machines or limited access, he's asking us to just deal with the attorney fee provision, not the whole broader dispute. To deal with the attorney fee position is like this honorable panel brought up, would have to interpret the contract. There's also provision in the contract, remember it's a mutual release agreement. So the arguments brought up about there were forgery use agreements and everything else, those were all released in paragraph five. In essence, what this contract was about is, under the mutual release, you're still required to pay us money. You're reflecting Judge Ness' instincts here. And you're defending the district court decision, and I understand that would be your position. But the concept of attorney's fees in so many other instances are deemed to be collateral. It's something that would be separate from the merits because we really can't decide that until one party or the other prevails. Why should we separate this type of attorney's fees provision out and say that it's not collateral while those other ones are collateral? The distinction here is why this is not collateral because it requires an adjudication on the merits. What has to be adjudicated beyond just saying they won or they lost? Well, there's where it gets complicated because if you do reverse the case, which we think is an abuse of discretion standard, what we're going to argue is that we're meritorious and that we were proper to bring the case before the district court and the district court did have jurisdiction because ultimately the Illinois Gaming Board decided it did not have jurisdiction. You very well may prevail. The question though is shouldn't the district court have an opportunity to make that call? The district court did make that call and says that it was not a 60B decision to make. Did I understand you a moment ago to say that you think you were the prevailing side in this case? In terms of the motion to dismiss that was granted by the court, the court converted it to a 12B6. The reason the court converted it to a 12B6 is because No, after a voluntary dismissal, you're contending you're the prevailing party? After the voluntary dismissal, the case goes back down is what my position would be is that the whole purpose of their motion to dismiss the case in district court was saying that because it dealt with an underlying video gaming the Illinois Gaming Board had exclusive jurisdiction. The Illinois Gaming Board says since it's not dealing with video gaming terminals and you're not licensed under gaming terminals it's not part of our jurisdiction. I think you're making it way more complicated than what happened in the federal district court in this building. I thought what Judge Ness had before him was a Rule 41A motion and he instantly said granted.  He wasn't getting involved in Illinois gaming law or figuring out anything with respect to the right to use or not use gaming equipment. That had nothing to do with what he decided. Then in the next breath he said and this is what I think we're reviewing I don't have jurisdiction to interpret a contract that calls for attorney's fees to a prevailing party. I think that's what happened in the federal district court. I say that because that's what's in the orders. None of it has anything to do with the gaming commission. Well you'd have to look at what the gaming commission did No you don't. That's not what Judge Ness did. But the point is that to make the determination whether they're the prevailing party under clause 8 of that contract is to make a determination of who won or who did win. What's hard about that here? You dismissed your case. It's over. It's over. But all that's over is the self-executing is we decided not to go forward. That's all that happened is we decided not to go forward and proceed on the claim that they owe us money under the mutual release agreement. So they walk away having provided no relief. They're the prevailing party. The more I hear about this I go back to a question I came upon in preparing for oral argument Why is this not just an agreement between two groups of robbers that we would just leave unenforceable and leave you to your own devices? That's right. It goes back to the question you had of Counselor Murphy in terms of this There's been no determination whether the MRA was valid or invalid. Could the fee issue be decided without deciding that question? No. No. Not at all. What's your response to that question? What's your position on the valid enforceability of the MRA? The valid enforceability of the MRA would require a full trial on the merits. Is it valid and enforceable in your view? Yes, it is. Thank you. So, that's my position but that's not a position that's ever been raised by the judiciary, by any court regarding the complicated and long processes If it is valid and enforceable and we think the fees are a collateral matter then that would suggest we should send this back to Judge Ness for an award of fees against your client. That goes down to the rabbit hole of if it's valid and enforceable, who is the party, who is not? That's easy. I disagree with it, whether it's easy, who is the prevailing party or not. I think what Judge Hamilton is saying is that we don't have to examine proceedings in front of the Gaming Commission. All we have to do is figure out what happened in the Federal Dirksen Building. And what happened in the Dirksen Building is your client made a choice to voluntarily dismiss under 41A and Mr. Murphy's client reacts to that by saying, that seems like we won. The case is gone. That's all we're saying. But it's also what Mr. Murphy is saying is that the contract was invalid on certain portions, but valid on other portions. Doesn't that require a full trial as to the merits of it? And doesn't that circumvent the purpose of 41A? Because, again, the cases that allow for attorney's fees always has that judicial imprimatur. And you don't have that in this case. What is the judicial imprimatur that is void? Is that true though? I mean, Section 1988 or Rule 11 fees can be assessed without a merits determination. But there's still some kind of judicial change in there. And isn't, I mean, five weeks ago the Supreme Court issued this Watsig decision which says that a district court has the authority to consider a Rule 60B motion following a voluntary dismissal without prejudice. And this is a decision that's telling us that this is something we can consider even though it was a voluntary dismissal. So we've got something in front of us that we can make a judgment on. The only way that attorney's can make an ultimate decision, who is the ultimate prevailing party. And that requires then a full trial on whether or not the contract is enforceable or not. Can't you have the same kind of disputes about whether somebody is a prevailing party within the meaning of Section 1988? Section 1988 litigation is not uncommon. Well, that's the whole distinction. Section 1988 is a statutory provision that allows for that. The collateral matter in that is that there is a statute that provides for the court's jurisdiction. But what you're saying is that, here's the problem. What you're saying is the problem to the panel or from your perspective is that figuring out whether Mr. Murphy's client is a prevailing party is going to draw everybody into the contract. And you're going to have to interpret it and there's going to be a whole bunch of litigation. My point is, isn't there often a whole bunch of litigation about 1988? In a civil rights case? But again, that's a civil rights case. And that's where it's distinguishable is because it's a civil rights case. So as a legal matter, what you're saying is that the source of the right to attorney's fees, it's the source of the right that is entirely dispositive as a legal matter. Here, it's a contract. There, it's an act of the U.S. Congress. It's a contract. It's not even declared valid or invalid in which the plaintiff is Midwest, not the plaintiff, the appellant Midwest, is saying that it's invalid in certain degrees, but it's valid in other parts of it. So that's the difference. And I have eight seconds left. I didn't have a chance to discuss it. But the denial of a 60B is clearly abusive discretion and that's in our Marquis vs. Federal Reserve Board case. And also Nelson and Wickets. Thank you very much, Mr. Lesmeister. Mr. Murphy, we're going to go back to you now for rebuttal. We'll give you three minutes. Thank you, Your Honors, and let me say thank you, too, for allowing us to divide the argument among counsel for the appellant. First of all, to address the point directly, the Burkle case that Mr. Lesmeister said dealt with, you know, they looked outside the pleadings, but that case was a Rule 41 dismissal case, and it relied on the contract in this Court of Senate back for attorney's fees on that contract. That's a Rule dismissal way late, right? We were on the second or third round of the complaint at that point. There had been new claims added and then dismissed. It was a very, very late proceeding. In the Burkle case? Yeah. That was a procedural, I'd say, tricky case. Let me ask you, Mr. Murphy, as you can tell, we're struggling with this, and each of you seems to be making arguments that at least if I understand them correctly. I'm wondering if perhaps we might not decide that the fee issue I guess much like what Judge Ness decided here, the fee issue under contract is not something we're going to answer in the abstract as to whether it's collateral or merits-based, but to say that at least in this case where the dispute is over the validity and enforceability of the underlying contract. In that situation, the fee issue is not collateral and therefore we would just say Judge Ness had it correct. I don't think that, I think that would be inconsistent with clear U.S. Supreme Court precedent. Cooter and Jell in the White case, we say that it's they've always taken the position, it's very consistent that attorneys' fees motions are always collateral to the underlying dispute. So I don't think there's any case law. No, I don't think they, I don't see how you get that general rule out of them. If you look at the Cooter and Jell and the White v. New Hampshire cases, Judge, Cooter and Jell of course says, quote, it is well established that a federal court may consider collateral issues after an action is no longer pending. This court has indicated that motions for attorney's fees are independent proceedings, supplemental to the original proceeding and not a request for a modification of the original decree. And that's at 496 U.S. at 395 to 96. And similarly in White v. New Hampshire, U.S. Supreme Court, 455 U.S. at 451. And that U.S. Supreme Court said, quote, regardless of when attorney's fees are requested, the court's decision of entitlement to fees will require an inquiry separate from the decision on the merits, an inquiry that cannot even commence until one party has prevailed. But this seems, what I'm struggling with is how is this separate from the merits since it turns on the validity and enforceability of the contract and maybe I'm just finally catching up with where Judge Ness was on this case. Yeah, understood, Judge. So it doesn't involve, the attorney's fees provision doesn't involve the enforceability or validity of the contract. And the reason is the reason is, Judge, is because like I said, Judge Shaw twice dismissed their pleadings. And the reason he dismissed their pleadings is because he said look, the plaintiffs, you're enforcing this contract and what they're trying to enforce is what they called the duty of good faith and fair dealing. There's nothing in the text of the contract the way in which they're trying to enforce it. And so the judge looked at that and said, yeah, the way you're enforcing it you're requiring Midwest to act as your proxy to install these games. You have to go ask the Illinois Gaming Board first if that's valid enforceable. The Illinois Gaming Board refused to say that it's valid enforceable. That doesn't mean that the contract is invalid and unenforceable. What it means is under the IGB rules, under the IGB regimen, the Illinois Gaming Board said, look we're not going to say that's valid enforceable the way what plaintiffs are doing with this agreement. And if you look at the text of the agreement like Les Meister admitted, they admit it's invalid, it is valid, and it is enforceable. So we know that it's valid and enforceable at least for this attorney's fees issue based on their admission. And nobody has ever said that it's invalid or unenforceable. What we know is Judge Shah twice dismissed it on that basis. I thought you were arguing it's invalid and unenforceable. No, and if you look closely at the brief, like I said, it's a subtle point, I know. We've always said that the way that the plaintiffs are trying to enforce this agreement against us is that they're trying to make us their proxy to install games and then pay them when we do that. That is illegal under Illinois Gaming Board rules and statutes. But the MRA itself is just paying for use agreements. That is not invalid or unenforceable. So it's a subtle distinction but it matters here because the way they're enforcing it, Judge Shah first dismissed it and then dismissed it again, the complaint. And when he dismissed it the second time, he said and this is in the record, his dismissal was not with prejudice or without prejudice. And the way he described it, he said he was being very cryptic on purposes because he was going to dismiss with prejudice. But he said you know what, I'm going to let you go to the Illinois Gaming Board to try to make this determination. When the Illinois Gaming Board issued its final board order, final decision and said we're not going to say this is valid and enforceable. We can't do it. That then became, what we're saying is effectively with prejudice. And just like and also as we've written our briefs, the statute of limitations has also long passed on these claims. And based on the Elmore case that we cite, this is the 7th Circuit case, we know that because it's been dismissed under 41, this is effectively with prejudice regardless of anything else. And that makes us the prevailing party also as a matter of law. And so because of that and because of the procedure in the way this worked out it essentially effectively is with prejudice. We know that from precedent and that gets us to the point Lester Lesmeister said this must, it necessarily requires a judgment on the merits. Well first of all we disagree. There's no precedent that says that. None whatsoever. But also we believe that we effectively have that because the precedent makes clear that this case has been effectively dismissed with prejudice. Thank you Mr. Murphy. Thank you Mr. Shates. Thank you as well Mr. Lesmeister. We've been aggressive in our questioning we appreciate all your responses and the case will be taken to our advisement.